UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO



FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

05 MAY 10 PM 1: 27

CLERK-ALBUQUERQUE

DYAN CLEMENTS,

    Plaintiff,

vs.

SANDIA CORPORATION,
a Delaware Corporation,
d/b/a Sandia National Laboratories,
LOCKHEED MARTIN CORPORATION,
a Maryland Corporation,
L.E. SHEPPARD, W.L. NORRIS, and
R.F. HAHN,

    Defendants.

NO. CIV-05-514 WPJ DJS

JURY DEMAND

## COMPLAINT FOR RETALIATION, DISCRIMINATION, AND BREACH OF CONTRACT

COMES NOW Plaintiff Dyan Clements (hereinafter, Ms. Clements), by and through her attorney of record, J. Edward Hollington, J. Edward Hollington & Associates, P.A. and for her Complaint against the Defendants, states:

### I. JURISDICTION AND VENUE

1. Ms. Clements is a resident of Tijeras, Bernalillo County, New Mexico. She has been employed with the Defendant Sandia National Laboratories (hereinafter, SNL) since 1980.

2. Defendant Sandia Corporation is a Delaware Corporation d/b/a Sandia National Laboratories, and is a U.S. Government owned/contractor operated facility (GOCO).

3. In 1979 the United States Congress designated Sandia National Laboratories (SNL) as a National Laboratory.

4. Sandia Corporation is a wholly owned subsidiary of Defendant Lockheed Martin Corporation. Lockheed Martin Corporation is the sole stockholder of Sandia Corporation.

5. Defendants Sheppard, Norris, and Hahn are management employees of SNL, and reside in Bernalillo County, New Mexico.

6. SNL is an employer as defined by the Age Discrimination in Employment Act, 29 USC § 623(a) (ADEA), and the New Mexico Human Rights Act (hereinafter, NMHRA), NMSA 1978 § 28-1-1, et seq.

7. Ms. Clements filed charges of discrimination (age) on or about April 28, 2004, and a charge of retaliation on October 21, 2004, with the EEOC as Charge Nos. 390-2004-01810, and 390-2005-00077, respectively.

8. The EEOC mailed Ms. Clements a Notice of Right to Sue letter for both charges on March 29, 2005.

9. The New Mexico Department of Labor, Human Rights Division (hereinafter, NMHRD) mailed Ms. Clements Orders of Non-Determination on April 11, 2005 (age discrimination claim), and April 25, 2005 (retaliation claim).

10. All acts and occurrences on which Ms. Clements' claims are based occurred in the state of New Mexico.

11. This Court has jurisdiction over the parties and subject matter, and venue is properly before this Court.

## II. STATEMENT OF FACTS

12. Lockheed Martin Corporation, through its wholly owned subsidiary Sandia Corporation, d/b/a Sandia National Labs (hereinafter, SNL), manages and operates SNL pursuant to a contract with the United States Department of Energy (hereinafter, DOE).

13. SNL receives most of its funds for its operation from DOE via federal contracts.

14. Lockheed Martin Corporation, pursuant to the DOE Management and Operations Contract guarantees the performance, duties and responsibilities of the Sandia Corporation operation and management of SNL.

15. The United States Congress and DOE have oversight and significant regulatory authority over the mission, operations, and management of SNL.

16. SNL is a state actor because it is controlled by a U.S. government agency, is delegated public functions by the United States government, and SNL is entwined with governmental policies. The United States government is entwined with SNL management and control.

17. Defendant L.E. Sheppard is employed with SNL as Vice President of 6000, Energy, Information and Infrastructure Surety. Defendant W.L. Norris is employed with SNL as the Level II Manager of Stockpile Surveillance Cluster. Defendant R.F. Hahn is employed with SNL as Manager of Enhanced Surveillance and Data Department. Defendants Sheppard, Norris, and Hahn were managers who exercised supervisory authority and control over Ms. Clements.

18. During Ms. Clements' employment with SNL, she has received numerous favorable evaluations, promotions, and pay raises.

19. Ms. Clements's work with SNL has been primarily in explosives, with programs involved with the National Nuclear and Security Administration Agency (NNSA). Ms. Clements has extensive knowledge, skill, training, and expertise in the field of explosives involving NNSA programs.

20. During 2003 through early 2004, Ms. Clements held the position of System Evaluation Engineer (SEE), with a specialty in explosives. Ms. Clements functioned as the Explosive Component Surveillance Program Manager from 1986 to March 2004.

21. In 2003, Ms. Clements became concerned that the design organization of SNL which also works with the NNSA program was manipulating and misinterpreting test data to justify expenditures of over $75 Million for developing a new spin rocket design.

22. The surveillance organization in which Ms. Clements works was a separate and independent organization from that of the design program.

23. Ms. Clements questioned the design team's analysis and conclusions of the test data, and objectively demonstrated that the current spin rocket systems were not flawed, and the expenditure of public funds for a new spin rocket was unnecessary and a waste of public funds.

24. During 2003, SNL reorganized the surveillance organization (12360) by moving this cluster of five organizations into the weapon design organizations (2000), thereby combining them under one Vice Presidency, Weapon Systems. Surveillance was no longer an independent organization from the design group. Prior to this move, the 12360 Surveillance cluster reported to the Executive Vice President of the laboratory.

25. Ms. Clements and others in the surveillance organization expressed concerns that the reorganization created an inherent conflict of interest, and resulted in the surveillance organization losing its independence, oversight, and ability, and authority to objectively carry out its function under NNSA.

26. Ms. Clements expressed those concerns to her superiors, and explained that loss of such independence compromised the surveillance ability to objectively evaluate nuclear weapons under NNSA jurisdiction.

27. In early spring of 2003, Ms. Clements and her manager filed a complaint with the Inspector General's (hereinafter, IG) Office of the DOE regarding their concerns and the implications of the loss of independence in the surveillance functions by being combined

with the design organizations. Their concern was that this loss of independence opens the door for a number of abuses including conflict of interest, lack of oversight (checks and balances), potential for bias, reliability and safety concerns, and the potential for the mismanagement of funds. Cited as an example was the design team engaging in potential waste, fraud, and abuse in its efforts to obtain $75 Million, now estimated to be over $100 Million in federal funds to develop a new spin rocket system.

28. Ms. Clements' actions in speaking out on the potential waste, fraud, and abuse issues, the example involving the spin rocket issue, and concerns that the surveillance organization's ability to objectively evaluate nuclear weapons significantly were compromised with the reorganization, constituted matters of public concern.

29. Ms. Clements has had several meetings with DOE representatives about her concerns of waste, fraud, abuse and implications of loss of independence of surveillance program.

30. Ms. Clements was warned by a colleague that filing a complaint with IG would be harmful to her position and future at SNL as the nature of the IG complaint required specialized knowledge that would point to her as the complainant.

31. In March of 2004, Ms. Clements was removed as a project lead for the Core Explosive Surveillance Program, and limitations were placed on the type of work she could perform. She was replaced with a younger (age 25-28) employee with less experience, knowledge, and skill. Ms. Clements helped hire the employee who replaced her. The employee had been hired specifically to support and help Ms. Clements with her job. Ms. Clements had provided training to the person that replaced her. These changes constituted significant changes in her working conditions.

32. In September of 2004, Ms. Clements was told by Defendant Hahn that she would be removed from all explosive activities.

33. Defendants also placed more severe restrictions on Ms. Clements by preventing her from communicating with persons in other related organizations. This restriction was not imposed on other similarly situated employees.

34. The significant changes in Ms. Clements working conditions, functions, and limitations on her ability to communicate with others, created severe obstacles with Ms. Clements' ability to complete projects which had been assigned to her. Further, these changes and limitations caused a "black mark" on Ms. Clements' career record with SNL. Limiting Ms. Clements' ability to communicate with others effectively precludes her from team projects. Any effort to find comparable positions within SNL requires evidence of ability to interact in a team atmosphere. Lack of experience on team projects results in her being excluded from consideration for other positions. The communications restrictions also besmirched Ms. Clements reputation and relationship with colleagues with whom she worked and caused her extreme anguish, stress, and humiliation.

35. Ms. Clements' most recent performance evaluation ranked her at the bottom percentage of similarly situated personnel. Ms. Clements had always been ranked in the top of 40 among her peers of professional - technical staff. In the corporate salary band, Ms. Clements, during her career, has placed above mid-line salary band for her peers. Ms. Clements has always received raises at or above the median raise for the yearly performance period. As a result of the less than favorable evaluation, she received an increase in her base pay of only 1.4%. In previous years, she had received raises of over 4%.

36. The most recent evaluation disentitled Ms. Clements to a raise of any significance, and constitutes an adverse employment action.

37. Ms. Clements has satisfied administrative prerequisites for filing these claims of discrimination and retaliation pursuant to ADEA and NMHRA.

38. The actions in substantially changing Ms. Clements' job functions and conditions by her removal from explosives, giving her less favorable job evaluations and significantly smaller raises, constitutes adverse employment action, motivated in part by retaliation for Ms. Clements' exercise of her First Amendment rights, and filing charges of discrimination with EEOC/NMHRD.

39. As a proximate result of the Defendants' wrongful conduct, Ms. Clements has suffered loss of income and benefits, including back pay and front pay, emotional distress, humiliation, and other compensatory damages to be proven at trial.

40. Ms. Clements has incurred attorney fees and costs in bringing this action.

41. The Defendants' conduct amounts to wrongful, willful, and intentional deprivation of Ms. Clements protected rights.

## COUNT I
## 42 USC 1983 (First Amendment)

42. Plaintiff realleges the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. SNL was created by actions of the United States Congress, and the United States government is and remains intricately involved in the management, mission, and operations of SNL.

44. The U.S. government is sufficiently entwined in funding, management, and oversight of SNL such that actions and decisions of SNL are attributable to the state.

45. Ms. Clements' actions in speaking out to her supervisors and the IG of concerns regarding potential waste, fraud, and abuse of public funds, loss of effective

independence of the surveillance organization, and its ability to properly monitor the effectiveness of U.S. nuclear weapons constitute matters of public concern.

46. Defendants took adverse employment action against Ms. Clements, in part, because she engaged in protected speech activity.

47. As a proximate result of the Defendants' retaliatory conduct, Ms. Clements has lost income and benefits, including front pay, back pay, emotional distress, humiliation, and other compensatory damages to be proven at trial.

48. The acts of the Defendants constitute willful, wanton, malicious, and intentional deprivation of Ms. Clements' protected constitutional rights.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in her behalf, and against Defendants, for violation of her First Amendment rights, and award her damages for loss of income and benefits, including back pay, front pay, emotional distress, humiliation, punitive damages, attorney fees and costs, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT II
### Retaliation (ADEA)

49. Plaintiff realleges the allegations contained in paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50. Ms. Clements engaged in protected activity when she filed a charge of discrimination (age) with the EEOC on April 28, 2004 as Charge No. 390-2004-0180.

51. Defendants took adverse employment action against Ms. Clements, in part, because she filed a charge of discrimination.

52. As a proximate result of the Defendants' retaliatory actions, Ms. Clements has incurred losses of income and benefits, including back pay, front pay, and other pecuniary losses.

53. The Defendants intentionally retaliated against Ms. Clements for filing a charge of age discrimination, and she is further entitled to liquidated damages pursuant to 29 USC § 626(b).

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendants, for violations of the ADEA (retaliation), award her loss of income and benefits, including back pay, front pay, other pecuniary losses as provided by the ADEA, liquidated damages, attorney fees and costs, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT III
### Retaliation (NMHRA)

54. Plaintiff realleges the allegations contained in paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55. Plaintiff engaged in protected activities under NMHRA when she filed a charge of discrimination with the EEOC on April 28, 2004.

56. Defendants took adverse employment action against Ms. Clements, in part, because she filed a charge of age discrimination.

57. As a proximate result of Defendants' retaliatory conduct, Ms. Clements has incurred actual losses, including loss of income and benefits, back pay, front pay, emotional distress, humiliation, and other actual losses to be proven at trial.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against the Defendants, for violations of NMHRA, award her actual losses, including, but

not limited to, loss of income and benefits, including back pay, front pay, emotional distress and humiliation, attorney fees, costs, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT IV
### Discrimination (ADEA)

58. Plaintiff realleges the allegations contained in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Ms. Clements is over the age of 40.

60. Ms. Clements was qualified for the position of System Evaluation Engineer (SEE), Explosive Component Program Manager.

61. Ms. Clements was removed from the position of Explosive Component Program Manager, and replaced with a younger employee (age 25-28).

62. As a proximate result of Defendants' discriminatory conduct, Ms. Clements has experienced loss of income and benefits, including front pay, back pay, and other pecuniary losses.

63. The Defendants intentionally discriminated against Ms. Clements based in part on her age, which intentional conduct entitles Ms. Clements to liquidated damages.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendants, for violations of ADEA, award her damages for loss of income and benefits, including back pay, front pay, liquidated damages, attorney fees and costs, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT V
### Breach of Contract

64. Plaintiff realleges the allegations contained in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65. SNL has written policies and procedures that apply to all employees.

66. As part of those policies and procedures, SNL promises that it will not retaliate against any employees who report concerns of waste, fraud, and abuse to SNL or outside agencies.

67. SNL's policies and procedures constitute an implied employment contract.

68. Defendants took adverse employment action against Ms. Clements in part because she expressed concerns and filed complaints with the IG about potential waste, fraud and abuse.

69. Defendants' conduct violates Plaintiff's contractual rights, and amounts to breach of contractual promises.

70. As a proximate result of SNL's breach of the implied employment contract, Plaintiff has incurred losses, including, but not limited to, loss of income and benefits, including back pay, front pay, and other pecuniary losses to be determined at trial.

71. Defendants' conduct constitutes sufficient culpable mental state to award Plaintiff punitive damages for willful, wanton, malicious, and intentional deprivation of her rights.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor, and against Defendant SNL, for breach of contract, and award her damages for loss of income and benefits, including back pay, front pay, and other consequential damages, punitive damages, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT VI
## Injunctive Relief

72. Plaintiff realleges the allegations contained in paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73. Pursuant to 42 USC § 1983, ADEA and NMHRA, Plaintiff requests the Court to enter injunctive relief as follows:

   1. Order Defendants to reinstate Ms. Clements in her former position of Explosive Component Program Manager, or comparable position..

   2. Order Defendants to retroactively implement a raise comparable to similarly situated employees.

   3. Remove the limitations and restrictions placed on Ms. Clements' involvement in explosives.

   4. Order that the Defendants refrain from any further retaliatory conduct, and for such other equitable relief as the Court deems just and appropriate.

Respectfully submitted,

J. EDWARD HOLLINGTON & ASSOCIATES, P.A.

By: _____
J. Edward Hollington
Attorney for Plaintiff
708 Marquette Avenue N.W.
Albuquerque, NM 87102-2035
(505) 843-9171
(505) 843-7027 fax

complaint.final

12